# LUTHER HURD v. STATE.

No. A-6945.   Opinion Filed September 21, 1929.
(281 Pac. 150.)

Anglin & Stevenson and Forrest M. Darrough, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter called the defendant, was convicted on a charge of possession of intoxicating liquor, and sentenced to serve a term of imprisonment in the county jail of Seminole county for 30 days, and to pay a fine of $50.   Motion for new trial was filed, considered, and overruled, and defendant has appealed to this court.

Briefly, the testimony of the state is that the deputy sheriff went out to the farm on which the defendant was living and searched defendant's home and did not find any intoxicating liquors.   But some distance from defendant's home, in and near a barn, he claims to have found a quantity of whisky, sugar and some mash and other things to make whisky.

On cross-examination the defendant was asked if he knew whose barn it was where the stuff was found, and he answered: "Jim Hurd's."

"Q. Do you know whose place it was?    A.   No, sir; it was Jim Hurd's place."

Witness further stated he did not know to whom the whisky, mash, and sugar found belonged; he did not see the defendant in possession of or having anything to do with it; that when he went to the place the defendant was coming toward his home driving some hogs; that the defendant had a barn which he used which was about 50 yards from his house.  Witness further stated there was a large branch between this barn, where they found the whisky, and the house defendant lived in; that he had hard feelings against the father of the defendant.

Duck Worth testified on behalf of the defendant that he was acquainted with the place where the defendant lived; had known it all his life; that he lived near the barn until the house burned in 1925; that the barn where the whisky was found is almost a quarter of a mile from defendant's home; that the defendant's barn is about 50 yards from his house.

E. L. Lancaster testified he knew the defendant, and that he was with the defendant the morning he was arrested; that the deputy sheriff asked the defendant whose barn it was, and he told him it belonged to his mother; that the hay and grain in the barn belonged to Claud Hurd; that the barn is around a quarter of a mile from Luther's house.  The testimony shows that Lancaster was a brother-in-law of the defendant.

The defendant in his own behalf testified he had been living on a portion of the farm, which his mother owned, of 640 acres; that he came back from Holdenville the morning before the officers were out there; that he did not have any stuff in the barn where they found the whisky; that the hay and other grain in the barn be-

longed to Claud Hurd; that nothing found by the officers that morning was his, nor did he have anything to do with putting them in the barn, or locating them near the barn; that he had never seen anything found by the officers until they showed them to him the morning they were out to the farm; he had been living on the place for about four months.

This is, in substance, the testimony of the state and the defendant.

There is no question but that the officers found whisky, mash, and sugar in and near the barn about a quarter of a mile from where the defendant was living; there is not any testimony to show that this defendant had possession of the barn or any of its contents. The testimony as to the owner of the hay and grain in the barn is that it belonged to Claud Hurd; the defendant testifying positively that he did not have anything to do with the barn, did not own the hay and other grain in the barn, and did not have anything to do with the whisky, sugar, or mash claimed to have been found by the officers.

In this case a jury was waived, and the case submitted to the court.

The defendant assigns six errors alleged to have been committed by the trial court. The first is that said court erred in overruling plaintiff in error's motion for a new trial; second, the judgment of the court is contrary to the law; third, the judgment of the court in contrary to the evidence. These assignments of error will all be considered together, as they all relate to the question as to whether or not there is sufficient evidence to sustain the judgment.

The charge of which the defendant was convicted was having possession of certain intoxicating liquors with the unlawful intent then and there on the part of the said Luther Hurd to barter, sell, and give away said whisky to others.

After a careful reading of the testimony, we hold that the court erred in overruling the motion of the defendant for a new trial; that the judgment and sentence of the court is contrary to the law and the evidence. Luck v. State, 38 Okla. Cr. 322, 260 Pac. 1118; Wheeler v. State, 40 Okla. Cr. 92, 267 Pac. 282.

There being no competent evidence to sustain the judgment, the case is reversed.